(No. 43499.— ▬▬▬)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. EARLON STERLING *et al.*, Appellants.

*Opinion filed September 20, 1972*

UNDERWOOD, C.J., took no part.

DAVID GOLDBERGER, JOHN HENRY SCHLEGAL, and R. EDEN MARTIN, all of Chicago, for appellants.

WILLIAM J. SCOTT, Attorney General, of Springfield, and PAUL R. WELCH, State's Attorney, of Bloomington (THOMAS J. IMMEL, Assistant Attorney General, of counsel), for the People.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendants were charged with criminal trespass to land (Ill.Rev.Stat. 1969, ch. 38, par. 21—3(b)) in that they refused to leave the property known as the Eastland Shopping Center when requested to do so by the president of the Eastland Merchants Association. They were found guilty after a bench trial in the circuit court of McLean County and each was fined $100 and costs. This appeal follows.

The sole issue presented by defendants is whether their conviction under the trespass statute deprives them of their right to free speech under the first and fourteenth amendments to the United States constitution. They further contend that the State has used its trespass laws to prohibit constitutionally protected activities on private property that is open to the public and thus becomes subject to the public's rights.

The State maintains, however, that first amendment rights cannot be invoked where the defendants knew permission was necessary to remain on the property but refused to obtain such permission. The State further argues that the decision in *Amalgamated Food Employees Union, Local 590 v. Logan Valley Plaza, Inc. (1968), 391 U.S. 308, 20 L.Ed.2d 603, 88 S.Ct. 1601,* upon which defendants rely, applies only to activities that are in some way related to the general commercial activities performed on the property.

The facts are not in dispute. The defendants and six other persons entered the Eastland Shopping Center about noon on Saturday, July 26, 1969, to distribute leaflets. The leaflets contained the text of a letter directed to The

Daily Pantagraph, a local newspaper, which it had refused to print. The letter dealt with the racial situation in Cairo, Illinois, and criticized the newspaper's reporting of the incidents. Defendants did not secure permission and claim they had no notice of any regulations or procedure necessary to obtain such permission. The manager of the Plaza testified that the rules were not posted nor were they in any way published.

The Eastland Shopping Center, located within the city limits of Bloomington, Illinois, is about 2½ miles from the downtown area. It was built on a 43-acre tract, 10 acres of which are owned by Lincoln National Life Insurance Company and rented to Sears Roebuck & Company as a department store. The remaining 33 acres are owned by B.M.J. Development Corporation of Kansas City, Missouri, and leased to 27 tenants. The buildings take up some 320,000 square feet and are all under one roof. Approximately 32,000 square feet is a mall area, completely enclosed, and maintained separately from the stores.

The mall is controlled exclusively by the owners through the Eastland Merchants' Association which assesses the lessees for the cost of maintenance. It serves as a common area for shoppers and contains benches and fountains. Its use was always related to the business of the stores in the Center for promotional activities such as fashion shows, automobile exhibits, and by service groups with permission. Entrance is obtained through the stores as well as through six doors opening directly into the mall.

Defendants were distributing the leaflets in this mall when they were approached by a maintenance man who inquired if they had permission to do so. The group responded that they had not been given permission but that the *Logan Valley Plaza* opinion gave them that right, and the maintenance man departed. Delmar Murray, owner of a plaza store and president of the Merchants' Association, asked the same question, informing a defendant that "this wasn't allowed in our mall," and asked Miss Smith, a

member of the group, to leave. She refused. Murray then read the following prepared notice: "You are hereby notified that you are not permitted on these premises. Therefore, I do hereby notify you to depart the premises. You shall be permitted fifteen minutes to depart and your entry on these premises is forbidden thereafter. This notice is given to you pursuant to the provisions of Ch. 38, Illinois Revised Statutes, I.R.S., Section 21–3 (1967)."

The group discussed the matter and finally only the three defendants remained in the mall, and the other members entered some of the stores. Thirty minutes later, the police arrived and requested that the defendants cease distributing the leaflets. When they did not comply, seven persons, including the three defendants, were arrested. There is no evidence that any defendants were disorderly or hindered business.

Courts have frequently considered the issue of whether the rights of private ownership of property can be invoked to prevent the exercise of free speech as protected by the first amendment. In *Marsh v. Alabama (1946), 326 U.S. 501, 90 L.Ed. 265, 66 S.Ct. 276,* defendant, a Jehovah's witness, was arrested for distributing religious literature on the business block of a company-owned town, and charged with remaining on private property after being asked to leave. In reversing her conviction, the United States Supreme Court noted that the privately owned street was open to the public and indistinguishable from any public area. The court stated: "The more an owner, for his advantage, opens up his property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it." 326 U.S. 501,506.

The *Marsh* decision was the basis for the court's ruling in *Amalgamated Food Employees Union, Local 590 v. Logan Valley Plaza (1968), 391 U.S. 308, 20 L.Ed.2d 603, 88 S.Ct. 1601,* which case presented the question of whether peaceful labor picketing of a business located on a

privately owned shopping center can be enjoined as an invasion of the property rights of the owners of the land on which the center is situated. The court held that the shopping center, in that it was generally open to the public, was the functional equivalent to the business block in *Marsh* and that "the State may not delegate the power, through the use of its trespass laws, wholly to exclude those members of the public wishing to exercise their First Amendment rights on the premises in a manner and for a purpose generally consonant with the use to which the property is actually put." 391 U.S. 308, at 319.

Defendants cite a number of decisions by other State courts and lower Federal courts, specifically *Tanner v. Lloyd Corporation (9th cir. 1971), 446 F.2d 545,* which have refused to restrict the *Logan Valley* rationale to situations where the first-amendment activity is directly related to the use to which the property is being put. The United States Supreme Court, however, has recently considered the problem and its decision is dispositive of this appeal. *Lloyd Corporation v. Tanner (1972), 407 U.S. 551, 33 L.Ed.2d 131, 92 S.Ct. 2219.*

In *Tanner,* on writ of *certiorari,* the Supreme Court interpreted its prior decision in *Logan Valley* and refused to extend first amendment protection to leaflet distributions in the enclosed mall of a shopping center when the subject of the leaflets was in no way related to the center's operation. In that case respondents had been distributing anti-war literature in the mall of the plaza when they were asked to leave. They sought declaratory and injunctive relief in Federal district court which was granted. The Court of Appeals affirmed, accepting the district court's factual determination that the shopping area was the "functional equivalent of a public business district." Thus, first amendment rights could be exercised under the rationale of the *Marsh* and *Logan Valley* decisions.

The Supreme Court reversed, holding that *Logan Valley* was not to be so broadly interpreted. The majority

stated, "The holding in *Logan Valley* was not dependent upon the suggestion that the privately owned streets and sidewalks of a business district or a shopping center are the equivalent, for First Amendment purposes, of municipally owned streets and sidewalks. No such expansive reading of the opinion for the Court is necessary or appropriate. The opinion was carefully phrased to limit its holding to the picketing involved, where the picketing was 'directly related in its purpose to the use to which the shopping center property was being put,' 391 U.S., at 320 n. 9, and where the store was located in the center of a large private enclave with the consequence that no other reasonable opportunities for the pickets to convey their message to their intended audience were available." (407 U.S. at ———, 33 L.Ed.2d at 139-140, 92 S.Ct. at 2226.) The court then noted the fact that the anti-war content of the literature was in no way related to the operation of the center or of any of its businesses. The record also indicated that, unlike *Logan Valley,* where a denial of the right to picket would effectively deprive the picketers of all reasonable opportunity to convey their message, the distributors had been able to move their operations to the public sidewalks and streets and thus were afforded "adequate alternative avenues of communication." The court held that considering these factors, there was no dedication of the private property "to the public use as to entitle respondents to exercise therein the asserted First Amendment rights."

Similarly, in the instant case, we cannot agree that the defendants were entitled to distribute their leaflets in the Eastland Shopping Center. It was admitted by one defendant that no relationship existed between the Eastland Center and the newspaper to which their criticism was directed.

Furthermore, two defendants testified that they had been distributing the leaflets, apparently unimpeded, in

front of the Daily Pantagraph Building in the business district of downtown Bloomington before deciding to move to the Eastland Shopping Center. Under these circumstances the defendants' interpretation of *Logan Valley* in light of *Tanner* is without support.

We therefore affirm the judgments of the circuit court of McLean County.

*Judgments affirmed.*

MR. CHIEF JUSTICE UNDERWOOD took no part in the consideration or decision of this case.